Good morning, Your Honors. May it please the Court. I'm Jeremy Horowitz on behalf of the EEOC. This is a fees case in which the sole issue before this Court is whether the EEOC was acting unreasonably, frivolously, or without foundation in urging this Court to adopt its interpretation of Title VII. So can I ask you a fundamental question? Sort of rolling the clock back to when this litigation began, before this Court's decision of 2015, etc. Give me some examples of what you think a pattern or practice of resistance to the Title VII rights would be and contrast it with what you think unlawful employment practices are. Just one or two examples of both. An unlawful employment practice is defined very clearly in the statute under 703 and 704 relating to various sorts of discrimination and retaliation. So resistance doesn't have the benefit of that kind of definition since 707A. So what is it in your view? So resistance could include an unlawful employment practice, but it could also reach beyond that to something like the separation agreement at issue in this case. Something that would act as a chill on individuals who would like to...it would chill an individual from speaking with the EEOC. So in other words, I'm guessing, but this is why I want to hear your view. But the best I could tell from your brief is that the Commission's idea of a practice of resistance refers somehow to internal firm practices that aren't focused on how people of different categories are treated, but whether it's this release that the Commission alleged was confusing or opaque, or whether it's a practice of shredding all your documents at the end of every year so that nobody can ever get enough information to pursue a Title VII action. I'm just trying to clarify in my own mind, what's resistance? Because if you can really tell me that it's something different, that would be an important factor for me in trying to figure out whether your initial position was at least well-founded enough to resist attorney's fees. Certainly, Your Honor. Well, going back to cases that the Attorney General brought before the 1972 amendments, there were the KKK cases, there was the case with the theaters in Mississippi, where there were individuals who were interfering with people's rights under Title VII or under Title II, which uses the same language. Do you have to be an employer? Under Title VII? Under 707A? Is it the employer's acts of resistance, or could it be somebody else's? The statute says an employer or a person, Your Honor. So it could be someone else who was sending hate mail to you for filing things. Conceivably, yes, Your Honor. I mean, the better you can convince me that there's something different about resistance, the better off you will be, in my view. Well, certainly, Your Honor. So resistance can be anything that discourages people from speaking with the EEOC or taking advantage of EEOC procedures. That could include an unlawful employment action, but there are also these sort of interstitial... And you concede that if it had been an unlawful employment action, I know that's an aspect of this case because of the Ramos complaint. Correct. But you concede that had it been an unlawful employment action, you would have had to go through conciliation, you would have had to have either an individual charge or a commissioner's charge, you would have had to go through all the 706 procedures. Absolutely, Your Honor. We've been very consistent. So it's only some 707A cases that your position was at the time, your unsuccessful position was at the time, that those were not required. Correct. Correct, Your Honor. But there are these interstitial practices that are not related specifically to discrimination against an individual. Right, it does. I'm just looking at the language. It does say any person or group of persons. It's not talking about employers, which is... Correct. Correct. So that's where the KKK example came from. You know, you argue that you can act without a charge, but conciliation  addresses the procedure following filing of a charge. It is in the section that follows addressing all unlawful employment practices. Why would this action be exempt from that conciliation provision? Well, Your Honor, those conciliation provisions in the regulations are dependent on a charge of an unlawful employment practice. 1601.24 specifies an unlawful employment practice, and 1601.27 specifies a charge of an unlawful employment practice. The, in terms of unlawful employment practices, that is defined again in 703 and 704. That is, conciliation in the statute in unlawful employment practice. Now, it would be impossible for somebody other than an employer to engage in an unlawful employment practice? That's correct, Your Honor. So that's not the kind of thing that some other person could be engaged in, some local vigilante or... That's exactly right, Your Honor, because it wouldn't be an employment practice. Counsel, help me understand the EEOC's resistance to conciliation in this case, because if I look at the exchange of correspondence from the summer of 2013, it looks an awful lot to me like conciliation, yet the EEOC keeps insisting, no, this is not conciliation. What's going on there? Well, Your Honor, conciliation is very... I should say first that we had no objection to negotiation, and I think the record shows that we had no objection to negotiation. In terms of the specific conciliation, that is a process that's defined specifically in the statute. So what part of it... I mean, I had exactly the same question Judge Hamilton did. I thought, are we having a huge fight over the label we're putting on? What happened? Or is there something more that would have happened if you had considered it conciliation as opposed to negotiation? Well, Your Honor, we are acting in the public interest in order to... to the extent that we were able to negotiate... That's not the answer to my question. If you had called it conciliation, what would you have done that you didn't do? I think it probably... I think the CVS's resistance to negotiation outside of conciliation, I believe relates to the confidentiality aspect of it. All right, so I'm still... You're still inside your own world of employment. I'm sorry, Your Honor. Let me try this from a somewhat different angle, Mr. Horowitz. The central thing that seemed to trouble the district judge about this case was the failure to comply with what he viewed as a duty to conciliate under your own regs. In both this court's decision in mock mining and the Supreme Court's unanimous opinion, the courts have made it very clear that if there is a failure to conciliate, the remedy is not dismissal. The remedy is a pause so that the parties can go through an adequate conciliation process. It doesn't take much, we know, from the Supreme Court's decision in mock mining, but that can be done. If the remedy is not dismissal for a failure to conciliate, but simply go conciliate, an order from the court, how on earth could a failure to conciliate support a fee award? That's... I mean, that is an excellent question. And why is that argument never made by the Supreme Court after our court's decision in mock mining, or even now? Well, Your Honor, to get to that point, conciliation under our interpretation of 707A, conciliation just wasn't, it didn't arise. So that takes me back to my question, which might be part of the answer to Judge Hamilton's question. If you're conciliating with a capital C, I presume you are in part sitting down with the other side and saying, here's a problem, how are we going to resolve it? And I assume that there are probably some confidentiality rules that pertain to it. So what's different about this specialized agency process that deserves the name conciliation from more informal negotiation, I'll say? I believe CVS's objection to negotiation outside of the conciliation with a capital C that you were referring to was this idea of confidentiality. Why couldn't the commission, what, because the end result wouldn't be confidential? Correct. Because you wanted a consent decree, but that was negotiable, I assume. They would not negotiate. Well, you wouldn't move. I mean, you wanted the consent decree. You can have confidential negotiations about a public outcome. That happens all the time. I was in the antitrust division. We regularly settled things by consent decrees, and I assure you the discussions along the way were confidential. Your Honor, I believe it goes back to the idea of how broad 707A allows us to go after... No, I understand. I mean, your fundamental point is that your argument that 707A, at least in part, identifies a separate type of practice, not an unlawful employment practice, but something else that doesn't fall under the 707A, was not so far-fetched as to trigger attorney's fees. So I think I'm going to let you sit down now. Could I just put a thought out there? You know, the argument that the EEOC can pursue cases that do not even involve unlawful employment practices, and that conciliation isn't required precisely because no unlawful employment practice was alleged, is such an expansive interpretation. I would have expected that that would be explicit in the statute, not inferred, you know, from imprecise or vague choices of words. Never throughout this case, and as you know, I was on the original panel, has the EEOC pointed to... I mean, you've pointed to nothing in the regulations that recognizes that category of litigation, and nothing in the regulations contradicts the provisions of the statute. So, you know, absent some such wording, as I sit here, I have a lot of trouble thinking that the district court erred. Your Honor, I'd like to respond to that point, but I see... You should answer the judge's question. Our argument was based on the idea that 706 mentions conciliation. 706 mentions unlawful employment practices. Unlawful employment practices are defined carefully in the statute in 703 and 704, and 707A does not mention an unlawful employment practice. So we interpreted that difference in language as having meaning, as the Supreme Court has counseled us to do in the Young case, in Nassar. They say that every difference in language should be given effect, if it should be consistent. In terms of your concern about the expanse of our interpretation, in fact, it's still very narrow in terms of when it arises, only in those pattern of practice or resistance cases that don't involve an unlawful employment practice. And it's also very narrow in terms of the remedies available. So while I understand we did not carry the day in front of the panel with the argument, it certainly was not frivolous or unreasonable or any sort of abusive, any sort of lacking foundation. If I may, I guess, reserve the rest of my time for rebuttal. I think you've used it up, but I'll give you a minute at the end. Thank you, Your Honor. If Mr. Roth needs a little, I'll give him that too. Mr. Roth. Thank you, Your Honor. May it please the Court. Yakov Roth, representing CVS Pharmacy. I think I should start with Your Honor's question about why this was not conciliation. I think the answer is the EOC never claimed it was conciliating because the whole premise of conciliation is that it's a pre-suit resolution, a confidential resolution without the need for litigation. The negotiations are confidential, right? The negotiations are confidential, but if the result of the negotiations is a decree that is going to be public, it's a public resolution of the claim. I think the EOC has always acknowledged that conciliation is a resolution that would be without the need for litigation. In fact, the regulations But not necessarily with an outcome that is in whole or in part not public. Conciliation all the time might involve posting something on your bulletin board or doing various public things. There's a process called conciliation, and there's an outcome, which is something. It's very clear. I understand that CVS didn't want the outcome to be a consent decree, and the EEOC did, and things broke down at that point, I suppose. But I don't know why that's not a process of negotiation slash trying to think of the meaning, the dictionary meaning of conciliation means to resolve it by amicable means. I understand that, Your Honor, but both the statute and the regulation say that the EEOC cannot file the lawsuit unless conciliation has failed. So the notion that conciliation has succeeded and now we're going to file the lawsuit just can't be squared They wouldn't have filed it if conciliation had succeeded. Their demand was, we don't care what you agree to. We will file the lawsuit, and if we work out a resolution, we will then file a consent decree to resolve it. I understand, and that gets me to the point that if the bottom line had been something satisfactory to everybody, you wouldn't probably be here. I want to go back to 706A because I actually myself don't have any trouble envisioning a situation in which a person who is not an employer and thus not the kind of entity that can engage in an unlawful employment practice might be engaged in a pattern or practice of resistance to the enjoyment of the rights secured by Title VII and that this was the power was given to the Attorney General to prevent that kind of what I'm calling vigilante resistance that is not at all an overlap with unlawful employment practices. So nothing else, whether it's, you know, you put, actually thank you for your supplement, but in 1601.24, that's all talking about unlawful employment practices, and at the attorney's fees level, even if the panel wasn't convinced that the conciliation and complaint process were excused for this kind of thing, this is the Christenberg sense. We don't have even-handed two-way attorney's fees shifts in the employment area. There's a real thumb on the scale for a shift for a prevailing plaintiff, prevailing defendants, not so much. And I have troubles seeing why that isn't at least a logical reading. A few answers to that, Your Honor. First of all, I think there's also a thumb on the scale, fairly heavy thumb on the scale in favor of the district court's decision. Yeah, but not if there's a question of law. On this question, though, the district court agreed with the EEOC and said while it disagreed with its position, it agreed that the position was reasonable to go forward without a charge and without conciliation. That's right. He said he needed conciliation, but it was okay under 707A. District court said in the merits opinion and then on the fee award opinion after having been affirmed on the merits that the regulations required conciliation in all cases. Okay, conciliation is separate. Let's take the different steps here. I'm going to want to ask you the same question about mock mining. But in terms of 707A and proceeding without a charge alleging an unlawful employment practice to go after these patterns and practices of resistance, the district judge disagreed with the EEOC but said it took a reasonable position. Look at what we said in the Harvey Walner opinion. Look at the, was it the Doherty decision from the district court in Florida? That's not a crazy position. And I'm looking at page four of the district judge's opinion where he's addressing your difference between making a weak argument with little chance of success and making a frivolous argument with no chance of success. Reviews what the EEOC said. He concludes the paragraph by saying it cannot be said that the lawsuit was based on a frivolous factual premise. So then he turns to his arguments of law, which are not arguments where our duty to defer is anything like our duty to defer to him on the facts. He found for the commission on the facts, and we need to look at these legal provisions and say, was this so far out of bounds that attorney's fees are called for or not? Just on the threshold question of the standard of review, Your Honor, I don't agree with that. The legal question of whether the EEOC violated the regulations has been resolved. It was resolved by the prior opinion. But that's not the question anymore. The question now is whether their position was reasonable. You're using the word reasonable in two ways. The district court finds that it was not, quote, reasonable in the sense that you lose, but Christenberg doesn't equate that standard with something that is so weakly based in any kind of respectable legal argument that fees are required. Right. The question in the fee... To two different standards altogether. The question at the second phase of this case in the district court was whether the EEOC's position was unreasonable within the meaning of Christensen. Within the meaning of Christensen, not within the meaning of did you win or not. I agree. And you have confused the two standards. I think the question at the second phase of the EEOC's review in the fee award was applying the Christiansberg standard. He set it out and he said it was satisfied because he said the EEOC's reading of the regulations was unreasonable. Well, and what if I don't think their reading of the regulations was unreasonable? The regulation talks about unlawful employment practices, and I look high and low to see a theory that rests on unlawful employment practices. They're looking at resistance. Your Honor, the EEOC's complaint alleges unlawful employment practices. I know you have that sentence which they say now is a stray remark, and they don't actually talk about it anywhere else. There is the Ramos thing, but that gets dismissed and resolved. I understand that's there too. Yes, there is the Ramos charge, which you're right, they dismiss and say we're not acting based on the Ramos charge. We're not proceeding on that basis. We're not hanging our hat on that. Which I think is exactly what this Court warned about last time around, which is if 707A is construed as this broader power. It's not a broader power. It's a different power, and the Commission concedes that if it's an employer and the pattern or practice is an unlawful employment practice, then you have to conciliate. Then you have to do everything that 706 requires. Your Honor, it was an employer here. CVS is an employer. There was a charge of discrimination filed against it. It's clear under well-established law, based on that charge, the EEOC could have pursued whatever it discovered about CVS's wrongdoing in the course of its investigation. That may be a factual difference, but it doesn't mean that their theory of what 706A covers is frivolous. And you have yet to tell me what you think resistance means that's different from an unlawful employment practice. You're just reading the words out of the statute. Let me say a few things about that, Your Honor. First of all, on the meaning of 707A, which was not the basis for the Peabody, the District Court did not say their reading of 707A was unreasonable. No, but you're urging that as an alternative ground for affirmance. Yeah, I think that's way down the list of the unreasonable aspects of this litigation, but it is there, and the reason is we have 50 years of precedent about what Section 707 is about, and 50 years of legislative history that could not be clearer that what Congress was trying to do with Section 707 was allow an enforcement mechanism against repeat violations of the statute. There was nothing from 1964 until this case that would have allowed the EEOC to go after anyone in the absence of some discrimination or retaliation. Imagine a small town where the first folks in the 1960s who raise employment discrimination claims on the basis of race find that the banks are cutting off their lines of credit and landlords are kicking them off their land. That wouldn't be an unlawful employment practice, but those could be concerted efforts by others to try to shut down the assertion of civil rights claims. Would that be reachable by 707? I don't think so, Your Honor, under the way that statute has been interpreted by the Supreme Court. What Supreme Court case are you saying excludes that? Teamsters was the seminal decision about Section 707. I don't think Teamsters covers this at all. Teamsters sets forth what you have to prove to show a pattern of practice under Section 707. That a pattern of practice of an unlawful employment nature is what Teamsters case was about. And that's what every decision has been about. So what forecloses this expansion? Your Honor, I think that if you look at the entirety of what's happened since 1964, it's hard to understand. To meet the Christiansburg standard, it seems to me you've got to have some controlling authority as of 2014 that says this is not about the meaning of Section 707A. Because the rest of Section 707, C and E, makes clear, as this Court said last time, that when EOC is carrying out its functions under Section 707, it has to follow the Section 706 procedures and the regulations. If there were any doubt about what the statute means. So we want to talk about conciliation process. I would like to talk about two things actually. What I'd like you to address is the mock mining problem. That the remedy is not dismissal. Okay. I think the remedy is sort of irrelevant to the question of fees. The point of granting fees for failure to conciliate, which is what numerous courts of appeals have done over the decades, is that if conciliation, the point of conciliation is to avoid the need for litigation. Right? We're going to give you a chance. And so if they had filed this lawsuit without properly conciliating, just as the party in mock mining did, you would have come in and said they didn't conciliate. And following the Supreme Court's decision, the Court would have said, right you are. They didn't conciliate. Go off and conciliate. Well, Your Honor, this was after mock mining. I'm just saying that's how it would have happened. But it's not what happened. We did come into that argument. And nobody asked for a stay. The EOC didn't ask for a stay. And the district court didn't order a stay. On appeal, they didn't ask for a stay. An oral argument for this court last time, they expressly abandoned any request for a remand. You wanted the whole case dismissed. That's why you didn't ask for a stay. You wanted the wrong remedy. I don't think it was the, I actually disagree that that's the wrong remedy. But putting that aside. You think dismissal is the remedy? I think dismissal can be the remedy. How do you reconcile that with mock mining? It wasn't the question presented in mock mining, Your Honor. It was exactly the question presented in mock mining. And the Supreme Court addressed it. We addressed it in our opinion. The Supreme Court addressed it at the end of the opinion. And in fact, the employers in the mock mining briefing abandoned any notion that dismissal would be the correct remedy. Are you trying to say that that's just ill-advised dicta from the unanimous Supreme Court on this point? I don't think that the Supreme Court was setting forth the exclusive remedy for any violation of the pre-suit procedures. But I don't want to rest my hat on that. What I want to say is. Should the court find in favor of the employer, the appropriate remedy is to order the EEOC to undertake the mandated effort to obtain voluntary compliance. Yes, Your Honor. And that was in a case where the claim was not that the EEOC had abandoned its pre-suit procedures. The claim was that they hadn't taken it quite far enough. And the court said, OK, well, let them finish. No, the EEOC's position actually was we don't need to conciliate here. It was that it's not subject to judicial review. That was the claim in mock mining. A decision of how much we've conciliated or whether it's enough is not for the courts, they said. And the Supreme Court said, oh, yes, it is. A little bit. A little bit. That's right. The court made clear it's not. They don't have to do much to satisfy it. Which I think begs the question, why were they so resistant here? Which also begs the question, why wasn't what they did in the back and forth, I'll just call it with you, the functional equivalent of whatever you would have gotten from something that was under the rubric of conciliation? And it can't be because you didn't get what you wanted. Because somebody doesn't get what they want in everything. Of course, Your Honor. But there was nothing we could have promised them that would have avoided them filing this lawsuit. That's what their letter said. Because it's a pre-suit procedure. The whole point of conciliation being pre-suit and confidential. They can do that under mock mining. They can say, we really don't think this is capable of being resolved. It's our prediction that you're not going to meet our needs. That happens all the time. We have a settlement office that discusses mediation with people. And sometimes, I remember when I was in practice, I would go to these settlement conferences and think, boy, this is going to be a waste of time. And indeed it was. Nobody thinks this would have been a waste of time had the EEOC been willing to agree to a pre-suit voluntary compliance, which is the point of conciliation. All that means is that you had a red line you weren't willing to cross and they weren't willing to cross that red line as part of the statutory scheme. Your contention is that the EEOC cannot ever insist on a consent decree as a voluntary solution. Is that right? That is my position. And I think respectfully I would suggest that's the reason they never called this conciliation. It's precisely because they recognize that as well. And you won't find a single case Counsel, you might want to pay attention to what the Chief Judge has to say. I'm saying that's a very strong position because consent decrees, not actually just in the equal employment area, but throughout the civil legal system, are a common way of resolving things. And it doesn't mean that your internal negotiations getting there were subject to any kind of public review. Your Honor, I see my time is up. If you would like to conclude with a sentence, I will let you do that. Okay. Well, I was hoping to say that everything we've talked about aside, I do think the claim was fundamentally unreasonable because the contract expressly permits the activity that EEOC claims was being chilled by this contract. It is correct that one and this court said that in its decision last time around. I would say that is also another basis for affirming the judge's opinion. Thank you very much, Mr. Roth. Mr. Horwitz, your time ran out, but I'll give you a final minute. Thank you very much, Your Honor. I want to start by referring to the standard of review. Legal analysis where it's legal analysis contained in the district court's decision, as the court said, is reviewed de novo under this court's decisions in Pickett and Jaffe. So it's not the same deferential standard as the court alluded to. In addition, I just want to pick up on Mr. Roth's idea that because the position we argued for was not established over a number of decades, that we should have reasonably known it was not a valid position. But under Title VII, we acknowledge it was a novel argument, but under Title VII, novelty is pursuing novel theories has a vital role in Title VII. It's shown just in this court's recent decisions in Mock Mining, how the understanding of conciliation was developed in Hively, the understanding of what discrimination because of sex constitutes was expanded through this idea of novel claims being presented. Even where the novel claims don't end up succeeding, it has a valid, important function in clarifying what it is the law stands for. Okay. I think we'll have to stop there. Thank you very much. Thanks to both counsel. We will take this case under advisement.